## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KASIM HOWARD,

      Plaintiff,

v.                                                    Case No.  3:20-cv-939-MMH-PDB

ST. JOHNS COUNTY SHERIFF,
A governmental entity established
by and through the Constitution of
the State of Florida, et al.,

      Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendants St. Johns County Sheriff and Deputy Sheriff Jason W. Briggs' Motion to Dismiss Plaintiff's Amended Complaint with Memorandum of Law (Doc. 39; Motion), filed on November 2, 2020.  In the Motion, St. Johns County Sheriff (the Sheriff) and Deputy Briggs seek dismissal of Counts I, III, and VI of Plaintiff Kasim Howard's Amended Complaint and Demand for Jury Trial (Doc. 38; Complaint).  On November 30, 2020, Howard filed a response to the Motion. See Plaintiff's Response to Motions to Dismiss Filed by Defendants St. Johns County Sheriff and Deputy Sheriff Jason W. Briggs (Doc. 44; Response).  Accordingly, this matter is ripe for the Court's consideration.

## I.     Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly,

2

550 U.S. at 555 (citations omitted); see also BellSouth Telecomm., 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 679.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

In Count I of his Complaint, Howard alleges that Deputy Briggs violated his constitutional right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments when Briggs employed excessive force against him.  Complaint at 2-8.  In Count III, Howard brings the same claim against the Sheriff, as the governmental entity of which Deputy Briggs was an

---

[1]    In considering the Motion to Dismiss, the Court must accept all factual allegations in Howard's Complaint as true, consider the allegations in the light most favorable to Howard, and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.  Because this matter is before the Court on the Motion filed by Deputy Briggs and the Sheriff, the Court focuses its discussion on the claims and facts relative to those Defendants.

3

employee.[2]  Id. at 13-18.  And in Count VI,[3] Howard alleges that the Sheriff is liable under Florida state law for the tort of battery.  Id. at 22-26.

As the underlying facts of his claims, Howard asserts that on April 9, 2016, Deputy Briggs was following Howard as he was on his way to the gym. Complaint ¶¶ 8-9.  Howard alleges that he exited his vehicle once he stopped at the gym and Deputy Briggs approached him with a firearm.  Id. ¶¶ 10-11. Deputy Briggs pointed the firearm at Howard and demanded that Howard go to the back of the vehicle.  Id.  Howard questioned Deputy Briggs' demand and told him that he would raise his hands in the air if Deputy Briggs lowered the firearm.  Id.  ¶¶ 12, 15-16.  Once Deputy Briggs lowered the firearm, Howard put his hands in the air and Deputy Briggs "proceeded to place his hand around Plaintiff's throat and butted Plaintiff's chest with Defendant Briggs' hat and then tossed his hat."[4]  Id.  ¶¶ 15-16.  With his "hand and/or hands" still on

---

[2]      As noted by Defendants, Howard titles Count III as a claim for "Violation of the Fourth and Fourteenth Amendmendts [sic] to the United States Constitution: Wrongful Detention?Arrest and Excessive Force as to St. Johns County Sheriff 42 U.S.C. Section 1983." Complaint at 13.  However, Howard's allegations in Count III only pertain to an excessive force claim, Defendant treats Count III as an excessive force claim in the Motion, and Plaintiff does not argue otherwise in his Response.  As such, notwithstanding its title, the Court construes Count III as asserting a claim for excessive force against the Sheriff.  The Court further notes that the documents submitted by Howard contain numerous spelling and grammatical errors such as those apparent in the title of Count III.  The Court will provide verbatim quotations in the Order without regard to such errors.

[3]      The Complaint omits any count numbered "V."

[4]      Howard repeats the allegation that Deputy Briggs butted Howard's chest with his hat and tossed his hat three different times in the Complaint.  Without acknowledging whether this was in error, Howard claims in the Response that Deputy Briggs head butted and choked Howard.  See Response at 6, 9.  However, those are not the factual allegations included in the

Howard's throat, Deputy Briggs demanded that Howard get to the ground.  Id. ¶ 17.  Howard "continued with his hands in the air."  Id. ¶ 18.  Around this time, Officer Gillespie, a police officer employed by the City of St. Augustine, arrived on the scene.  Id. ¶¶ 7, 19.  Howard asserts that he requested that Officer Gillespie arrest Deputy Briggs for assault and report his conduct to a supervisor.  Id. ¶¶ 20-21.  Deputy Briggs and Officer Gillespie attempted to restrain Howard while he continued to question what he had done wrong.  Id. ¶ 26.  Then, with Howard's hands in the air, Deputy Briggs and Officer Gillespie aimed their tasers at him.  Id. ¶ 28.  According to Howard, Deputy Briggs instructed Officer Gillespie to "light him up" and Officer Gillespie shot "two tasers" at Howard hitting his abdomen and the inside of his thigh.  Id. ¶¶ 29-30.  Howard subsequently fell to the ground where he was physically restrained and handcuffed.  Id. ¶ 31.  Howard also contends that Deputy Briggs and Officer Gillespie declined to transfer him to the hospital and instead took him to the St. Johns County Jail where he received no medical treatment.  Id. ¶ 36.  According to Howard, the Sheriff issued him a ticket for driving an unregistered vehicle as well as driving without a seatbelt.  Id. ¶ 38.  In addition, the Sheriff charged Howard with "assault on a law enforcement officer and resisting an officer without violence."  Id.  Howard was acquitted of the

---

Complaint and Howard cannot amend his complaint in a response to a motion to dismiss.  See Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 1356 n. 6 (S.D. Fla. 2012).

criminal charges by a jury, "the ticket for driving an unregistered motor vehicle was dropped," and Howard paid the ticket for driving without a seatbelt[5] "at the direction and/or request of the trial court." Id. ¶ 41.  As a result of the incident on April 9, 2016, Howard alleges that he "suffered physical injury, physical pain and suffered mental anguish accrued medical bills, and accrued legal fees" and additionally suffered from " . . . mental injury, embarrassment, humiliation, mental anguish anguish [sic], causing the need for medical and mental health treatment." Id. ¶ 42.

## III.   Summary of the Arguments

In Count I, Howard asserts a federal excessive force claim against Deputy Briggs based on the force he used to effectuate Howard's arrest.  See Complaint at 2-8.  Deputy Briggs seeks to dismiss this claim based on qualified immunity.  See Motion at 3-7.  In Count III, Howard brings the same claim against the Sheriff.  Complaint at 13-18.  In the Motion, the Sheriff contends that Howard has failed to allege sufficient facts to establish Monell[6] liability.  See Motion at 7-9.  Last, in Count VI, Howard brings a state law tort claim for battery against the Sheriff, Complaint at 22-26, and the Sheriff seeks to dismiss it arguing that

---

[5]      Howard maintains that he "during all times alleged hereto was driving with a seatbelt."

[6]      Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978) (holding that a government entity is liable under § 1983 for an official's constitutional violation only if the violation was based on the government entity's policy, the actions of the official can be fairly deemed to represent government policy, or if the violation was the result of a custom or practice permitting such violation).

Howard has failed to allege whether Deputy Briggs was acting within or outside the scope of his employment so as to establish vicarious liability. See Motion at 9-10. Defendants also generally argue that the Complaint should be dismissed as a shotgun pleading.

In response to the Motion, Howard maintains that he has sufficiently pleaded facts to show that Deputy Briggs is not entitled to qualified immunity and also to establish Monell liability as to the Sheriff. See generally Response. In addition, Howard argues that while he does not explicitly allege whether Deputy Briggs was acting within the scope of his employment, it is nonetheless "clear that the Plaintiff is alleging that Deputy Briggs was acting within the scope of his employment." See id. at 12. Finally, Howard asserts that the Complaint does not constitute a shotgun pleading because Defendants have adequate notice of the alleged actions against them. See id. at 13.

## IV.  Discussion

### a. Pleading

Defendants argue that Counts I, III, and VI of the Complaint should be dismissed for failure to state a claim because the Complaint constitutes a "shotgun pleading" that impermissibly incorporates and repeats the same factual allegations in each count. Motion at 11. Typically, a shotgun complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before

7

and the last count to be a combination of the entire complaint." See Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321 & n.11 (11th Cir. 2015) (collecting cases).  As a result, "most of the counts . . . contain irrelevant factual allegations and legal conclusions."  Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).  In ruling on the sufficiency of a claim in a shotgun pleading, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action.  See id.

Upon review of the Complaint, the Court does not find that it constitutes an impermissible "shotgun pleading."  Rather than first setting forth the general factual allegations and then incorporating them by reference into each applicable count, counsel for Howard has repeated verbatim the underlying factual allegations each time they are relevant to a particular claim in the Complaint. See generally Complaint.  Notably, Howard does exclude irrelevant factual allegations from each count.  For example, in Counts II and IV, which are brought against Officer Gillespie and the City of St. Augustine, Howard omits the factual allegations related to the events that occurred prior to Officer Gillespie's arrival on the scene.  See Complaint at 8.  Moreover, after repeating the relevant factual allegations, Howard includes additional particularized allegations related to the specific cause of action asserted in each count.  See generally Complaint.  While the Complaint overall is unnecessarily repetitive,

and by no means a model of clarity, the Complaint is not subject to dismissal for being impermissibly pled or vague under Eleventh Circuit shotgun precedent.

### b. Count I: Excessive Force Claim Against Deputy Briggs

Howard asserts that Deputy Briggs is liable under 42 U.S.C. § 1983 for using an unreasonable amount of force in violation of Howard's Fourth and Fourteenth Amendment rights.  "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law."  See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  Deputy Briggs argues that the claim in Count I is due to be dismissed because he is immune from suit under the doctrine of qualified immunity.  See generally Motion.  Preliminarily, the Court notes that the defense of qualified immunity is available to an official sued in his individual capacity but not to one sued in his official capacity.  See Fitzgerald v. McDaniel, 833 F.2d 1516, 1520 (11th Cir. 1987).  Although Howard identifies Deputy Briggs in the caption of the Complaint as being sued "in his official and individual capacities," see Complaint at 1, he later specifically states that Deputy Briggs "is sued in his individual capacity," id. ¶ 6, and in the title of Count I, he includes the language, "as to Defendant Briggs individually," id. at 2 (emphasis added).  Additionally, while Howard argues that Deputy Briggs is not entitled to qualified immunity based on the allegations in the Complaint, he does not suggest that Deputy Briggs is sued in his official capacity such that

qualified immunity would be unavailable as a matter of law.  See generally Response.  Further, a claim for excessive force against Deputy Briggs in his official capacity would be due to be dismissed as redundant because Howard brings the same excessive force claim against the Sheriff in Count II.  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (suits against municipal officers in their official capacity where municipality is also a defendant are unnecessary and redundant).  Thus, the Court concludes that in Count I, Howard sues Deputy Briggs only in his individual capacity.  As such, the Court will turn to its consideration of the parties' respective positions regarding whether Deputy Briggs is entitled to the benefit of qualified immunity based on the allegations in Howard's Complaint.

The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"[7] Mullenix v. Luna, 577 U.S. 7, 12 (2015)

---

[7] In determining whether a defendant is entitled to qualified immunity, courts view the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then consider "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)); <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1266 (11th Cir. 2003). Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

To be entitled to qualified immunity, the defendant bears the initial burden of showing that his conduct was within the scope of his discretionary authority. <u>See</u> <u>Webster v. Beary</u>, 228 F. App'x 844, 848 (11th Cir. 2007); <u>Lee</u>, 284 F.3d at 1194. Here, it is undisputed that, at all times material to this case, Deputy Briggs was acting in his official capacity and within the scope of his discretionary authority.[8]   Accordingly, the burden shifts to Howard to demonstrate that qualified immunity is not appropriate using the two-prong test established by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).   In accordance with <u>Saucier</u>, the Court must ask whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct

---

[8] "'A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority.'" <u>Jones v. City of Atlanta</u>, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting <u>Lenz v. Winburn</u>, 51 F.3d 1540, 1545 (11th Cir. 1995)). Making an arrest is thus a discretionary function for a police officer. <u>See</u> <u>Crosby v. Monroe Cnty.</u>, 394 F.3d 1328, 1332 (11th Cir. 2004); <u>see also</u> <u>Lee</u>, 284 F.3d at 1194 (finding that "there can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff]," even though the plaintiff asserted that the officer used excessive force in the manner in which she was arrested).

violated a constitutional right?" Id.; see also Hope v. Pelzer, 536 U.S. 730, 736 (2002); Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting Scott v. Harris, 550 U.S. 372, 377 (2007)).  The court must also ask whether the right allegedly violated was clearly established at the time of the violation.  Hope, 536 U.S. at 739; Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Underwood v. City of Bessemer, ---F.4th---, 2021 WL 3923153, at *7 (11th Cir. Sept. 2, 2021) ("we ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct") (internal quotations omitted).  The Court may consider these questions in whichever order it chooses, and qualified immunity will protect the defendant if the answer to either question is "no." Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)[9]; Underwood, 2021 WL 3923153, at *7.

As such, "[t]o deny qualified immunity at the motion to dismiss stage, [the Court] must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was 'clearly established.'" Sebastian v. Ortiz, 918 F.3d 1301, 1307 (11th Cir. 2019) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). "When qualified immunity is asserted at the pleading stage, the precise factual

---

[9] In Pearson, the Supreme Court modified the procedure mandated in Saucier permitting trial judges the discretion to determine which prong of the qualified immunity analysis should be resolved first. See Pearson, 555 U.S. at 236.

basis for the plaintiff's claim or claims may be hard to identify." Id. at 238–39, 819.   Accordingly, courts risk "prematurely and incorrectly" answering the question of whether there was a constitutional violation when the facts are not fully developed.  See id.  In light of the scarce factual record at this stage of the proceedings, the Court will first look to whether the alleged constitutional violation[10] was clearly established.  The Court concludes that it was not.

The Supreme Court has instructed that in order

[f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). For purposes of this analysis the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the

---

[10]   The Court notes that Howard's claim must be analyzed under the Fourth Amendment rather than the Fourteenth.  According to the Supreme Court:

all claims that law enforcement officers have used excessive force—deadly or not—in the course of arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed.2d 443 (1989).

plaintiff was unconstitutional.  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting <u>Hope</u>, 536 U.S. at 741); <u>see also</u> <u>Marsh</u>, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone of qualified immunity.").  The Eleventh Circuit recently addressed a plaintiff's burden in establishing the existence of clearly established law.

> Under this Court's precedent, a right can be clearly established in one of three ways. [A plaintiff] must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." <u>Lewis [v. City of W. Palm Beach</u>, 561 F.3d 1288, 1291–92 (11th Cir. 2009)]. Although we have recognized that options two and three can suffice, the Supreme Court has warned us not to "define clearly established law at a high level of generality." <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) (quotation marks omitted). For that reason, the second and third paths are rarely-trod ones. <u>See</u> <u>Gaines v. Wardynski</u>, 871 F.3d 1203, 1209 (11th Cir. 2017) (collecting cases). And when a plaintiff relies on a "general rule[ ]" to show that the law is clearly established, it must "appl[y] with obvious clarity to the circumstances." <u>Long v. Slaton</u>, 508 F.3d 576, 584 (11th Cir. 2007) (quotation marks omitted; emphasis added); <u>see also</u> <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010) ("[I]f a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question.").

<u>Crocker v. Beatty</u>, 995 F.3d 1232, 1240 (11th Cir. 2021).  Thus, where the words of the federal statute or federal constitutional provision are specific enough "to establish clearly the law applicable to particular conduct and circumstances," then the plaintiff can overcome the qualified immunity privilege, even in the absence of case law.  <u>Vinyard</u>, 311 F.3d at 1350.  In this type of "obvious clarity"

case "the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." Id.

Alternatively, where the conduct alleged is not so egregious as to violate a statutory or constitutional right on its face, courts look to case law to determine whether the law is "clearly established." Id. at 1351. If the case law contains "some broad statements of principle" which are "not tied to particularized facts," then it may be sufficient to clearly establish the law applicable in the future to different facts. Id. However, to provide officials with sufficient warning, the case law must establish a principle such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. Last, in the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law. Id. at 1352. Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court. Id. at 1351; Crocker, 995 F.3d at 1240 (same). However, a case "on all fours" with materially identical facts is not required to establish "fair warning" to government officials. Holloman v.

Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (discussing the impact of Hope on Eleventh Circuit precedent).

In support of his argument that the alleged violation of his constitutional right was clearly established, Howard makes the conclusory and confusing assertion that "while there is no fact pattern directly on point, the facts are novel in a law enforcement officer knew or should have known that the use of force would be excessive." Response at 7-8. Howard also asserts that "Plaintiff has raised issues as to whether the Plaintiff's had a known constitutional right to be from excessive force of which Defendant Briggs knew or should have been aware," see id. ¶ 21, and "Plaintiff contends that Plaintiff's constitutional right was clearly established at the time," see id. ¶ 22. In addition, Howard argues, "Defendant Briggs would have been on notice of this clearly established constitutional right at the time that these allegations took place." Id. ¶ 24. Howard cites to three cases in support of his argument without any attempt to identify the applicable statement of principle to be distilled from any of them or the factual circumstances that make them materially similar to the facts of his claim.

The decision in the first case, Brand v. Casal, 877 F.3d 1253 (11th Cir. 2017), was decided on December 19, 2017, and vacated on May 1, 2018. The events at issue here occurred on April 9, 2016. Complaint ¶ 8. Thus, whatever import the court's holding in Brand might have given its vacatur, it is of no use

to Howard in demonstrating the contours of clearly established law as of April 9, 2016, as necessary to bar a defense of qualified immunity to Deputy Briggs. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) ("The law clearly establishing the violation also must be 'pre-existing'—that is, in effect at the time of the alleged violation."). Howard also cites to an opinion issued by the Ninth Circuit Court of Appeals. However, courts in this circuit "look[] only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." Crocker, 995 F.3d at 1240; Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citing Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009)). Finally, Howard cites to Fils v. City of Aventura, in which the Eleventh Circuit addressed an excessive force claim based on officers use of a taser for a minor offense.[11] 647 F.3d 1272, 1289 (11th Cir. 2011). In Fils, the Eleventh Circuit held that "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." Id. (emphasis added). In the instant case, however, based upon his own allegations, prior to being tased, Howard remained with his hands in the air continuously disobeying Deputy Briggs' instruction to

---

[11] The Court notes that Howard makes no attempt to show that the other alleged constitutional violations - pointing a gun at him, "butting him with his hat," or placing his hands on his throat - are clearly established.

get to the ground.  <u>See</u> Complaint ¶¶ 17-18.  In addition, Deputy Briggs and Officer Gillespie unsuccessfully attempted to physically restrain Howard.  <u>Id.</u> ¶ 25.  Without any attempt from Howard to explain how the <u>Fils</u> holding is instructive notwithstanding these distinctions, the Court does not find <u>Fils</u> demonstrates that any alleged constitutional violations here were "clearly established."

Further, to determine whether a use of force is excessive courts consider whether the suspect was compliant and whether the officer detained the person prior to using force.  <u>See</u> <u>Gomez v. United States</u>, 601 F. App'x 841, 850 (11th Cir. 2015) ("[T]he application of gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury.").  The Eleventh Circuit has noted that "a variety of physical force techniques used by police on unhandcuffed individuals constitute[ ] <u>de minimis</u> force that do[ ] not rise to excessive force that could violate the Fourth Amendment."  <u>Id.</u>  For example, in <u>Croom v. Balkwill</u>, 645 F.3d 1240, 1245, 1252 (11th Cir. 2011), the Eleventh Circuit held that force used against an elderly, arthritic, but not detained, woman was <u>de minimis</u>.  There, the officer ran up to her, "scream[ed] for her to 'hit the ground,'" and "[w]hen [she] was unable to comply," pushed her to the ground and placed a foot on her back.  <u>Id.</u> at 1245.  According to the court the force was <u>de minimis</u> and appropriate to gain control over the situation.  <u>Id.</u>

18

at 1252-53; see also Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (finding that force was de minimis where an officer "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs, and searched him."); Nolin, 207 F.3d at 1255 (finding that an officer used de minimis force when he "grabbed [the plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him."); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994) (finding that even though it was unnecessary for an officer to push the plaintiff against the wall after he had been handcuffed, "the amount of force [the officer] used, even if unnecessary," did not plainly violate the law).  Howard does not allege that the investigatory stop or his arrest were unlawful and "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  Vinyard, 311 F.3d at 1347 (citation omitted).  Indeed, the Eleventh Circuit has recognized that "the typical arrest involves some force and injury," see Rodriguez v. Farrell, 280 F.3d 1341, 1350 (11th Cir. 2002), and has held that "an officer's drawing a weapon and ordering a person stopped to lie on the ground does not necessarily constitute excessive force during an investigatory stop," Jackson v. Sauls, 206 F.3d 1156,

1172 (11th Cir. 2000) (citing <u>Courson v. McMillian</u>, 939 F.2d 1479 (11th Cir. 1991)).

Here, Howard alleges Deputy Briggs used excessive force when he pointed a firearm at Howard as he exited his vehicle after being followed by police. Complaint ¶¶ 9-11.  In addition, he asserts Deputy Briggs employed excessive force when he subsequently "butted Plaintiff's chest with Defendant Briggs' hat and then tossed his hat" and "placed his hand around Howard's throat" all while Howard was unhandcuffed and unrestrained. <u>Id.</u> ¶ 16.  Last, Howard alleges a violation when Deputy Briggs ordered Officer Gillespie to tase Howard, when Howard did not obey Deputy Briggs' command to get to the ground, he was unhandcuffed, and both Deputy Briggs and Officer Gillespie had previously attempted to restrain him.  <u>See</u> <u>id.</u> ¶¶ 25-31.  In light of Eleventh Circuit precedent permitting a variety of force techniques in circumstances similar to those presented in the instant case, it cannot be said that Deputy Briggs had fair warning that any of his actions would constitute a violation of Howard's Fourth Amendment rights at the time the events occurred.  The Court finds that Howard has failed to carry his burden of showing that any of the alleged violations of his constitutional rights were "clearly established."  Indeed, as alleged, the facts of the present case more closely resemble Eleventh Circuit precedent expressly finding no constitutional violation occurred.  Accordingly,

Deputy Briggs is entitled to qualified immunity and Howard's excessive force claim against him in Count I is due to be dismissed.

### c. Count III: Excessive Force Claim Against Defendant St. Johns County Sheriff

In Count III, Howard asserts that the Sheriff established policies that ultimately caused Deputy Briggs to employ excessive force against Howard. Subsumed within this claim are three separate arguments. First, Howard asserts that the Sheriff instituted a "practice, policy, and custom of using excessive force and intimidation." Complaint ¶ 136. Second, Howard proffers that the Sheriff failed to institute adequate training of his deputies in the need to use a firearm, physical force, or a taser, "when detaining and/or arresting a citizen." Id. ¶ 137. And third, Howard suggests that the Sheriff effectively ratified Deputy Briggs' allegedly unlawful and unconstitutional actions. Id. ¶ 136.

At the outset, the Court notes that "'[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents.'" Vineyard v. Cnty. of Murray, Ga., 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (citation omitted), cert. denied, 510 U.S. 1024 (1993). Therefore, Howard's claims against the Sheriff in his official capacity are municipal liability claims. Indeed, by naming the Sheriff, in his official capacity, in Count III, Howard is simply pleading claims of municipal liability

for the actions of Deputy Briggs. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). Accordingly, Howard's claim against the Sheriff is actually a claim against St. Johns County. Thus, the Court considers the Sheriff's liability in the context of those cases discussing county and municipal liability under § 1983.

The Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for liability in § 1983 actions. See Monell, 436 U.S. 658. Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook, 402 F.3d at 1115 (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693-94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course

of action is made from among various alternatives' by city policymakers." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84 (1986)).  A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation.  <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." <u>Sewell</u>, 117 F.3d at 489.

Similarly, in some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which [the municipality] may be held liable if it actually causes injury." <u>City of Canton</u>, 489 U.S. at 390.  Failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>Id.</u> at 388-89 (alteration added).  Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998);

see also Underwood, 2021 WL 3923153, at *11.  The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Id. at 1351.  Indeed, "the need for such training must be plainly obvious to [a municipality's] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); see also Rocker v. City of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009) (per curiam).  Notably, the Supreme Court, in dictum, has left open the possibility that in some instances "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations.  See Gold, 151 F.3d at 1352 (citing City of Canton, 489 U.S. at 390).  As an example, the Supreme Court pointed to need to train officers in the use of deadly force where the officers are provided firearms.  City of Canton, 489 U.S. at 390 n.10.

Finally, a municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)).  In this context, the "final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it."  Matthews, 294 F.3d at 1297-

24

98 (internal quotations and citations omitted).  The Eleventh Circuit also has suggested that a municipality's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of <u>Monell</u>." <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir. 1985); <u>see also</u> <u>Rivas v. Figueroa</u>, No. 11–23195–Civ., 2012 WL 1378161, *3 (S.D. Fla. Apr. 20, 2012) ("A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation") (citing <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986)).  But, a single failure to investigate a constitutional violation is insufficient to establish ratification.  <u>Salvato v. Miley</u>, 790 F.3d 1286, 1297-98 (11th Cir. 2015).

The Court concludes that Howard has failed to sufficiently allege that the Sheriff's policies, practices, and customs, or its failure to train its deputies, caused Howard's alleged injuries.  As referenced above, in the absence of an official policy, to sufficiently allege a municipal policy or custom, a plaintiff must assert facts that show a persistent and widespread practice of permitting a constitutional violation.  <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell</u>, 392 F.3d at 1289; <u>Sewell</u>, 117 F.3d at 489.  Similarly, in the context of raising a failure to train claim, the plaintiff must show that official decision makers were

25

deliberately indifferent to the need for training and discipline.  See City of Canton, 489 U.S. at 390; Wright, 919 F.2d at 674; Rocker, 2009 WL 4365226 at *2.

Despite accepting Howard's allegations and drawing all reasonable inferences in his favor, Howard has not presented factual allegations supporting even an inference that the Sheriff had a policy or custom of permitting officers to employ excessive force.  In his Complaint, Howard asserts that evidence of such a policy includes but is not limited to a lawsuit filed in 2015, as well as one filed in 2018, both of which included allegations of the use of excessive force by the Sheriff.  Complaint ¶ 136.  Howard alleges that these lawsuits "evidence" that the Sheriff maintained a "policy and custom of the use of excessive force and intimidation." Id.  With regard to the 2015 lawsuit, Howard simply alleges that it was filed without providing any information relating the facts and circumstances surrounding the excessive force claim or how they compare to the facts alleged here.  Id.  While Howard describes the facts and circumstances underlying the excessive force claim in the 2018 lawsuit, they do not appear to bear any resemblance to facts presented before the Court here.  The plaintiff in the 2018 lawsuit alleged that the defendant deputies unexpectedly entered his hotel room, cornered and tackled him to the ground, causing him to suffer physical injuries.  See id.  Howard does not explain how such circumstances establish the existence of an unconstitutional custom or policy.  Moreover,

Howard does not provide any information regarding the outcome of either lawsuit such that either could reasonably be expected to affirmatively demonstrate a policy or custom of unconstitutional conduct.  As such, Howard's inclusion of <u>two</u> incidents in which citizens apparently alleged that the Sheriff used excessive force, one of which occurred after the incident at issue here, do not support an inference that the Sheriff had a widespread practice and policy of permitting officers to use excessive force when encountering citizens at the time the alleged violation occurred.  <u>See</u> <u>e.g.</u>, <u>Pineda v. City of Houston</u>, 291 F.3d 325, 329 (5th Cir. 2002) (eleven reports of warrantless entries into homes did not create an issue of fact as to the existence of a policy and practice of unconstitutional searches); <u>Brooks v. D.R. Scheib</u>, 813 F.2d 1191, 1193-94 (11th Cir. 1987) (mere citizen reports of police misconduct, without verification that the reports had merit, were insufficient to establish a municipal policy and practice of widespread police misconduct); <u>Tucker v. Bradshaw</u>, No. 11-80058-CIV-RYSKAMP/VITUNAC, 2012 WL 13018687 at *3 (S.D. Fla. Jan. 19, 2012) (municipal liability claim undermined where complaint failed to allege that prior complaints of police misconduct were similar to behavior alleged in current case, or were substantiated to be valid complaints); <u>Btesh v. City of Maitland</u>, No. 6:10-cv-71-Orl-19DAB, 2011 WL 3269647 at *30-31 (M.D. Fla. July 29, 2011) (court unwilling to find city had pattern and practice of police use of deadly force where 48 prior reports of deadly force were eventually deemed

justified).

Similarly, Howard has failed to allege sufficient facts to support the failure to train prong of his § 1983 claim. Notably, the allegations in the Complaint are conclusory at best. Howard simply asserts that the Sheriff

> failed to institute adequate training of Defendant's deputies in the need to use a firearm when detaining and/or arresting a citizen, in the use of physical force when detaining or arresting a citizen, and in the use of a taser when detaining and/or arresting a citizen, and/or acted deliberately indifferent to the rights of individuals restrained and/or detained.

Complaint ¶ 137. While the incidents identified by Howard reflect that there may have been allegations of the use of excessive force by St. Johns County Sheriff's Officers, nothing in the Complaint suggests that those incidents were the result of insufficient training or the absence of training on the use of force. See e.g., Brooks, 813 F.2d at 1193-94; Tucker, 2012 WL 13018687 at *3; Btesh, 2011 WL 3269647 at *32-33. Compare Danley v. Allen, 540 F.3d 1298, 1315 (11th Cir. 2008) (numerous known incidents of unconstitutional conduct of defendant jailors that bore sufficient similarity to charges in instant case warranted court finding that supervisor had knowledge of widespread abuse), abrogated on other grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); J.W. v. Birmingham Bd. of Educ., 143 F. Supp. 3d 1118, 1168-73 (N.D. Ala. 2015) (deliberate indifference established where supervising officer knew of, and permitted, officers to engage in behavior that deviated from

stated policies). Here, Howard has presented the Court only with conclusory and speculative allegations that fail to support his underlying premise.  As the Supreme Court has stated, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Howard's failure to train claim, lacking in factual support, cannot proceed.

Last, Howard fails to allege sufficient facts to support his argument that the Sheriff implicitly ratified "the use of excessive force by its police department."  Complaint ¶ 136.  Howard does not provide the Court with any allegations supporting the assertion that someone at the Sheriff's Office with final policymaking authority adopted the unconstitutional basis for Deputy Briggs' allegedly unconstitutional conduct, see Matthews, 294 F.3d at 1297-98, or persistently failed to take disciplinary action against officers such that it could be said to ratify the conduct thereby establishing a custom or policy of using excessive force against citizens.  See Fundiller, 777 F.2d at 1443.[12] Applying the pleading standards required by Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 555, the Court concludes that Howard has failed to allege facts to support the ratification component of his § 1983 claim against the

---

[12] Notably, the Eleventh Circuit recently reiterated the established principle that a theory of ratification based upon a failure "to investigate a single incident" is foreclosed by Circuit precedent.  Underwood, 2021 WL 3923153 at *12 (quoting Salvato, 790 F.3d at 1298).

Sheriff.  For the foregoing reasons, the Court concludes that each of Howard's theories asserted in support of his § 1983 claim against the Sheriff fails. Therefore, Count III is due to be dismissed.

### d. Count VI: State Law Battery Tort Claim

Howard also asserts a claim against the Sheriff for battery under Florida law.  Complaint at 22-26.  The Sheriff argues that this claim should be dismissed because Howard fails to allege whether Deputy Briggs was acting within the scope of his employment.  Motion at 9-10.  Unlike claims under § 1983, under Florida law a municipality or Sheriff can be vicariously liable for the tortious acts of its employees.  See Young v. Borders, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, *21 (M.D. Fla. Sept. 18, 2014); Saballos v. Bonilla, No. 05-21928-CIV, 2006 WL 3940552, *8 (S.D. Fla. Dec. 5, 2006).  Indeed, Florida's statutory waiver of sovereign immunity, codified in Florida Statute section 768.28 states

> [t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions . . . shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . .

Fla. Stat. § 768.28(9)(a); see also Searer v. Wells, 837 F. Supp. 1198, 1201 (M.D. Fla. 1993).[13]  As such, "an employer may be held liable for the intentional torts

---

[13] A city, as well as its associated units, such as a sheriff's office, falls under the ambit of section 768.28(9)(a).  See e.g., Shehada v. Tavss, 965 F. Supp. 2d 1358, 1375 (S.D. Fla. 2013) (noting municipalities are governed by FLA. STAT. § 768.28); Battiste v. Lamberti, 571 F. Supp. 2d 1286, 1305-06 (S.D. Fla. 2008) (FLA. STAT. § 768.28 applies to Sheriff).

of an employee if the employee committed the tort while acting within the course and scope of his employment, with the purpose of benefiting the interests of the employer." <u>Nazer v. City of St. Petersburg</u>, No. 8:16-cv-2259-CEH-JSS, 2017 WL 3877631, at *5 (M.D. Fla. Sept. 5, 2017) (citations and internal quotations omitted).  Accepting the allegations in the Complaint as true and drawing all inferences in favor of Howard as the Court must, the Court finds that Howard has plausibly alleged that Deputy Briggs was acting within the scope of his employment.  Deputy Briggs' conduct in stopping and arresting Howard and subsequently transporting him to the St. Johns County Jail is reasonably understood to be the kind of task for which he was employed as a police officer. For these reasons, Howard plausibly states a basis on which the Sheriff could be held liable for a battery if committed by Deputy Briggs as alleged in Count VI.

## V. Conclusion

For the foregoing reasons, to the extent Defendants seek dismissal of Howard's Fourth and Fourteenth Amendments excessive force claim against Deputy Briggs in Count I on the grounds of qualified immunity, the Motion to Dismiss is due to be granted.  With regards to Howard's excessive force claim against the Sheriff, the Motion is due to be granted for a failure to adequately allege <u>Monell</u> liability.  As to Howard's state law battery claim, because he has

adequately alleged a basis for vicarious liability, the Motion to Dismiss will be denied as to Count VI.

Accordingly, it is **ORDERED**:

1. Defendants St. Johns County Sheriff And Deputy Sheriff Jason W. Briggs' Motion to Dismiss the Plaintiff's Amended Complaint with Memorandum Of Law (Doc. 39) is **GRANTED, in part, and DENIED, in part**.

    a. The Motion is **GRANTED** to the extent that Counts I and III of Plaintiff's Amended Complaint and Demand for Jury Trial (Doc. 38) are **DISMISSED**.

    b. Otherwise, the Motion is **DENIED.**

2. The Clerk of the Court is directed to terminate Defendant Deputy Sheriff Jason W. Briggs from the Court docket.  This case will proceed on the remaining claim against St. Johns County Sheriff in Count VI, as well as the claims against the City of St. Augustine Beach, and Officer Natalie L. Gillespie.

**DONE AND ORDERED** in Jacksonville, Florida this 17th day of September, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:

Counsel of Record