## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KASIM HOWARD,

      Plaintiff,

v.                                                    Case No.   3:20-cv-939-MMH-PDB

ST. JOHNS COUNTY SHERIFF,
A governmental entity established
by and through the Constitution of
the State of Florida, et al.,

      Defendants.

_____

## <u>O R D E R</u>

**THIS CAUSE** is before the Court on several motions: Defendant St. Johns County Sheriff's Motion for Summary Judgment (Doc. 48: Sheriff's Motion), Defendant, City of St. Augustine Beach's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 49; City's Motion), and Defendant, Natalie L. Gillespie's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 50; Officer Gillespie's Motion), all filed on October 1, 2021 (collectively, the "Motions"). Defendants City of St. Augustine Beach (the City) and Officer Gillespie filed the depositions of Deputy Briggs, Officer Gillespie, and Plaintiff Kasim Howard as well as the affidavits of Dr. Richard M. Hough Sr. and Jackie M. Parrish in support of their Motions. <u>See</u> Defendants City of St. Augustine Beach and Officer Natalie L. Gillespie's

Notice of Filing (Doc. 51; Notice of Filing).   In addition, they submitted various exhibits from Howard's deposition including a 2 minute and 28 second video recording.   See id.   The Sheriff also attached these three depositions as well as three photographs of Howard's vehicle.   See Sheriff's Motion, Exs. 1-6.   On November 4, 2021, Howard filed his responses to Officer Gillespie's Motion and the City's Motion, see Plaintiff's Response to Motion for Summary Judgment Filed by Defendant Natalie L. Gillespie (Doc. 59, 61;[1] Response to Officer Gillespie) and Plaintiff's Response to Motion for Summary Judgment Filed by Defendant City of St. Augustine Beach (Doc. 60; Response to the City), and on November 29, 2021, Howard filed his response to the Sheriff's Motion.   See Plaintiff's Response to Motion for Summary Judgment Filed by Defendant St. John's County Sheriff (Doc. 68; Response to the Sheriff).   The Sheriff filed a reply on December 14, 2021.   See Defendant St. Johns County Sheriff's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 70; Sheriff's Reply).   Additionally, Officer Gillespie filed a notice of supplemental authority on November 29, 2021.   See Defendant Natalie L. Gillespie's Notice of Supplemental Authority (Doc. 66; Notice of Supplemental Authority).   In light of the foregoing, the Motions in this action are ripe for the Court's consideration.

---

[1]      Howard appears to have inadvertently filed his Response to Officer Gillespie's Motion twice.   See Docs. 59 and 61.   The Court will refer to the response filed at docket number 61 in resolving the instant Motions.

## I.  Procedural History

On April 9, 2020, Howard initiated the instant lawsuit in the Seventh Judicial Circuit Court, in and for St. Johns County, Florida, against Deputy Briggs, Officer Gillespie, the Sheriff, and the City.  See Complaint and Demand for Jury Trial (Doc. 1-1).  Defendants removed the action to this Court based on federal question jurisdiction.  See Defendants, City of St. Augustine Beach and Natalie Gillespie's Notice of Removal (Doc. 1) filed on August 19, 2020.   In his operative Amended Complaint and Demand for Jury Trial (Doc. 38; Amended Complaint), Howard asserts four claims of excessive force in violation of the Fourth and Fourteenth Amendments against Deputy Briggs individually (Count I), Officer Gillespie individually (Count II), the Sheriff as the employer of Deputy Briggs (Count III), and the City as the employer of Officer Gillespie (Count IV) and two state law claims for battery against the Sheriff (Count VI) and the City (Count VII).[2]  On November 2, 2020, the Sheriff and Deputy Briggs filed a motion to dismiss the claims against them, see Defendants St. Johns County Sheriff and Deputy Sheriff Jason W. Briggs' Motion to Dismiss the Plaintiff's Amended Complaint with Memorandum of Law (Doc. 39), and the Court granted that motion, in part, and denied it, in part, on September 17, 2021, see Order (Doc. 47).  Specifically, the Court granted the motion to the

---

[2]     The Court notes that in the Amended Complaint, Howard fails to include a "Count V" and as such the fifth and sixth counts are mistakenly labeled Counts VI and VII.   For ease of reference, the Court will refer to the Counts as they are titled in the Amended Complaint.

extent that the federal excessive force claims against Deputy Briggs and the Sheriff in Counts I and III were dismissed.   Id.   However, the Court otherwise denied the motion finding that Howard plausibly alleged a state law battery claim against the Sheriff in Count VI.   Id.   As a result, the claims remaining and at issue for purposes of summary judgment are the federal excessive force claims against Officer Gillespie and the City and the state law claims for battery against the City and the Sheriff.   Defendants filed their Motions for Summary Judgment, seeking the entry of judgment as a matter of law on all remaining claims and Howard has responded in opposition.[3]

---

[3]       After Defendants filed their Motions on October 1, 2021, Howard requested and was granted extensions of time to respond to Defendants' Motions.   See Order (Doc. 55); Order (Doc. 57).   Howard timely filed his responses to the City's Motion and Officer Gillespie's Motion on November 4, 2021.   See Response to the City and Response to Officer Gillespie. However, he did not timely respond to the Sheriff's Motion and instead filed a motion requesting that he be permitted to file his response to the St. Johns County Sheriff (the Sheriff) a day late and attached his response to the motion.   See Plaintiff's Motion to File Response to St. John's County Sheriff's Motion for Summary Judgment One Day Late (Doc. 58).   On November 10, 2021, the Court entered an order granting Howard an extension of time to respond to the Sheriff's Motion "[c]onsidering the reason for the delay, the brevity of the delay, and the absence of opposition . . . ."   See Order (Doc. 64).   However, the Court directed Howard to "file the response as a separate docket entry" by November 17, 2021.   Id. Counsel for Howard failed to do so.   As a result, on November 22, 2021, the Court entered an Order (Doc. 65) directing Howard to show cause why the Sheriff's Motion should not be treated as unopposed pursuant to the Local Rules.   On November 29, 2021, Howard responded, see Plaintiff's Response to Order to Show Cause (Doc. 67), and also filed his response to the Sheriff's Motion as a separate docket entry, see Response to the Sheriff.   Notably, in its Order dated October 25, 2021, granting one of Howard's requests for an extension of time, the Court instructed Counsel for Howard that future filings must comply with the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)).   See Order (Doc. 55).   Additionally, on November 5, 2021, the Court specifically directed counsel of record to review the typography requirements set forth in Local Rule 1.08 and to ensure all future filings are in compliance.   See Order (Doc. 63).   Nevertheless, Counsel for Howard has continued to ignore this Court's instructions and the Local Rules of this Court in subsequent filings.

## II.    Background Facts[4]

On April 9, 2016, between four and five in the afternoon, Plaintiff Kasim Howard was traveling on State Road 312 from his home to Amp's gym.   <u>See</u> Exhibit 2: Video Teleconference Deposition of Kasim Howard (Doc. 48-2; Howard Depo) at 61-62, 70.   At this same time, Deputy Jason W. Briggs with the St. Johns County Sheriff's Office was conducting traffic enforcement in the area.   <u>See</u> Exhibit 1: Deposition of Deputy Jason W. Briggs (Doc. 48-1; Deputy Briggs Depo) at 6, 11.   As Howard came to a stop at a traffic light facing eastbound, Deputy Briggs was traveling westbound through the intersection. <u>Id.</u> at 10.   According to Deputy Briggs, he observed that Howard was not wearing his seatbelt.   <u>Id.</u>   As a result, Deputy Briggs turned his patrol car around and entered Howard's tag number into his computer.   <u>Id.</u> at 12.   As he pulled up next to Howard, Deputy Briggs' computer search revealed that Howard was driving an unregistered vehicle.   <u>Id.</u>   When the traffic light turned green, Deputy Briggs merged into the lane behind Howard in his marked sheriff's patrol vehicle and "activated [his] emergency equipment to initiate a traffic stop."   <u>Id.</u> at 13-15.

---

[4]    Unless otherwise noted, the facts recited herein are undisputed. As such, for the purposes of resolving Defendants' Motions, the Court views all disputed facts and reasonable inferences in the light most favorable to Howard. The Court notes that the facts may differ from those ultimately proved at trial. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1190 (11th Cir. 2002).

Despite Deputy Briggs having activated his emergency lights, Howard proceeded to drive slowly past "a number of places to stop" prompting Deputy Briggs to intermittently activate his vehicle's emergency sirens.  Id. at 17-18. Howard continued driving to Amp's gym where he taught boxing lessons, unaware that he was being pursued by law enforcement.  See Howard Depo at 25, 61.  Deputy Briggs requested backup and followed Howard into the Amp's gym parking lot located in a warehouse complex.  Deputy Briggs Depo at 21-22, 27-28.  As Howard parked his truck in the area designated for the gym, Deputy Briggs parked his patrol car so that he would be visible from the street to other officers responding to his call for backup.  Id. at 27-28.  Deputy Briggs exited his vehicle and began shouting commands for Howard to exit his truck. Id.  When Howard did not appear to immediately respond, Deputy Briggs drew his firearm.  See id. at 29-31.

Howard first noticed Deputy Briggs when he exited his truck to grab his belongings and heard someone yelling at him.  Howard Depo at 74.  Deputy Briggs demanded that Howard move to the back of the vehicle and as Howard began to do so, he asked Deputy Briggs why he was "being harassed."  Id. Howard also questioned why Deputy Briggs was pointing a firearm at him.  Id. at 78.  Deputy Briggs requested that Howard turn around to the back of the truck and Howard told Deputy Briggs he would not do so.  Id. at 80-81 ("I told him I would not turn around to the back of my truck, because I had tools on the

back of my truck, sharp objects."); <u>see</u> <u>id.</u> at 172.   Deputy Briggs then asked
Howard to lay on the ground and Howard told Deputy Briggs that he "[would]
not lay on the ground."   <u>Id.</u> at 81, 84, 172, 176.   Howard instead insisted that
he "would put [his] belongings down if [Deputy Briggs] put down his gun . . . ."
<u>Id.</u> at 84. Deputy Briggs lowered his gun and Howard dropped his belongings
and put his hands in the air.   <u>See</u> <u>id.</u>   According to Howard, Deputy Briggs
then walked up to Howard, pushed him against the truck, placed his left hand
around his throat and said, "I told you to get your f**king ass on the ground."
<u>Id.</u> at 85.   Deputy Briggs then holstered his gun and did the same thing with
his other hand.   <u>Id.</u>   Howard testified that this choking incident did not cause
him physical injury and lasted "[m]aybe two seconds."   <u>Id.</u> at 179.   Afterwards,
Howard said he "just smiled, kept my hands in the air. I stepped to the side and
I stepped back."   <u>Id.</u> at 181.

Around this time, Natalie L. Gillespie, an officer for the City of St.
Augustine Beach, arrived at the scene in response to Deputy Briggs' request for
backup.   <u>See</u> <u>id.</u> at 174, 185-86; <u>see</u> <u>also</u> Exhibit 3: Deposition of Natalie L.
Gillespie (Via Zoom video) (Doc. 48-3; Officer Gillespie Depo) at 6-7; Howard
Depo at 186.   Officer Gillespie noticed that Deputy Briggs parked his vehicle
further from Howard's than is customary for law enforcement and knew
something was wrong.   Officer Gillespie Depo at 12.   She then pulled up
beside Howard's vehicle as Howard was standing at the driver's side of his

vehicle.  Id. at 12-14.   Officer Gillespie could hear Deputy Briggs shouting for Howard to show him his hands and get to the ground.  Id. at 14-15.   At this point, Howard admits he began using profanity with the officers.   Howard Depo at 189.   Officer Gillespie directed Howard to get to the ground, but Howard testified that he still refused to comply.   Id. at 19; Howard Depo at 92-94.   Officer Gillespie then drew her taser so Deputy Briggs could re-holster his and attempt to grab Howard's arm.   Deputy Briggs Depo at 46-47; Howard Depo at 89.   When Deputy Briggs tried to grab Howard's hands, Howard pulled back his arms and then walked away.    Howard Depo at 89-90 ("[Deputy Briggs] tried to put handcuffs on me, but I put my hands in the air and walked away from him.").   Deputy Briggs and Officer Gillespie each gave Howard additional commands to get to the ground and put his hands behind his back, see Officer Gillespie Depo at 32; Deputy Briggs Depo at 50-51, but Howard did neither. Howard Depo at 93-94.   At this point, a video recording of the incident reflects Officer Gillespie warned Howard, "Hey! I'm gonna tase you!" but Howard continued to raise his voice and shake his finger at Deputy Briggs who unsuccessfully tried to grab his arm one more time.   Deputy Briggs Depo at 51. Howard, who is visibly larger than Deputy Briggs and also larger than Officer Gillespie, pulled his arm away from Deputy Briggs and walked away positioning himself in between the two officers.   Deputy Briggs Depo at 52. Officer Gillespie next yelled "Taser!" before deploying her taser at Howard.   Id.;

Officer Gillespie Depo at 33; Howard Depo at 94.   Howard described the taser darts as hitting him "[o]ne in the crotch area and one in the abdomen."   Id. at 118.   He fell to the ground screaming in pain as the officers directed him to roll over and put his arms behind his back.   Id. at 97.   When Howard was unable to do so on his own, Deputy Briggs put Howard's arms behind his back, handcuffed him, and sat him up against the truck.   Id. at 98-99; Deputy Briggs Depo at 60-61.   Two other deputies soon arrived, one of whom requested an ambulance for Howard and the other who removed the taser prongs from Howard's body.   Deputy Briggs Depo at 61-65.   Paramedics evaluated Howard at the scene, but ultimately left him in the back of Deputy Briggs' vehicle.   Id. at 66-67.   After his arrest, Howard was transported to the St. Johns County Jail where he informed a nurse that he hurt his neck, buttocks, and lower back when he fell after being tased.   Howard Depo at 123, 128-129, 199.

### III.   Legal Standard

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(a).   The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Rule 56(c)(1)(A).[5] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged

---

[5]   Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.   "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

In citing to Campbell, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV. Discussion

### A. Federal Excessive Force Claims

In Count II, Howard asserts a federal excessive force claim against Officer

Gillespie based on her use of the taser in effectuating Howard's arrest.[6]   See Amended Complaint at 8-13.   Officer Gillespie seeks summary judgment as to this claim, asserting that she is entitled to qualified immunity.   See Officer Gillespie's Motion at 11.   The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"[7]   Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Carr v. Tatangelo,   338 F.3d 1259, 1266 (11th Cir. 2003).   Indeed, as

---

[6]     As noted in the Court's Order (Doc. 47) entered on September 17, 2021, Howard's excessive force claims must be analyzed under the Fourth Amendment rather than the Fourteenth. According to the Supreme Court:

> all claims that law enforcement officers have used excessive force—deadly or not—in the course of arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed.2d 443 (1989).

[7]     In determining whether a defendant is entitled to qualified immunity, courts view the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then consider "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

"'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that [her] actions were lawful."   Lee, 284 F.3d at 1200 (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

To be entitled to the protection of qualified immunity, a defendant bears the initial burden of showing that her conduct was within the scope of her discretionary authority. See Webster v. Beary, 228 F. App'x 844, 848 (11th Cir. 2007); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).   Here, it is undisputed that, at all times material to this case, Officer Gillespie was acting in her official capacity and within the scope of her discretionary authority.[8] Accordingly, the burden shifts to Howard to demonstrate that qualified immunity is not appropriate using the test established by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201 (2001).   In accordance with Saucier, the Court must ask whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct violated a constitutional right?" Id.; see also Hope v. Pelzer, 536 U.S. 730, 736 (2002); Beshers v. Harrison, 495 F.3d 1260,

---

[8]     "'A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority.'" Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). Making an arrest is thus a discretionary function for a police officer. See Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004); see also Lee, 284 F.3d at 1194 (finding that "there can be no doubt that [the officer] was acting in [her] discretionary capacity when [s]he arrested [the plaintiff]," even though the plaintiff asserted that the officer used excessive force in the manner in which she was arrested).

1265 (11th Cir. 2007) (quoting <u>Scott</u>, 550 U.S. 372, 377 (2007)).   The court must also ask whether the right allegedly violated was clearly established at the time of the violation.   <u>Hope</u>, 536 U.S. at 739; <u>Saucier</u>, 533 U.S. at 201; <u>Scott</u>, 550 U.S. at 377; <u>Underwood v. City of Bessemer</u>, 11 F.4th 1317, 1328 (11th Cir. 2021) ("we ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct") (internal quotations omitted).   The Court may consider these questions in whichever order it chooses, and qualified immunity will protect the defendant if the answer to either question is "no."   <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 236 (2009)[9]; <u>Underwood</u>, 11 F.4th at 1328.

Addressing the first question, the Court must determine whether, in the course of arresting Howard, Officer Gillespie subjected him to an unlawful use of force.   Specifically, the Court must evaluate whether Officer Gillespie used excessive force when she tased Howard.   In conducting this analysis, the Court heeds the Supreme Court's cautions that:

> [d]etermining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.   Our Fourth Amendment jurisprudence has long recognized that the right to

---

[9]   In <u>Pearson</u>, the Supreme Court modified the procedure mandated in <u>Saucier</u> permitting courts the discretion to determine which prong of the qualified immunity analysis should be resolved first. <u>See</u> <u>Pearson</u>, 555 U.S. at 236.

make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.   Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396–97 (1989) (internal citations and quotations omitted).   See also Croom v. Balkwill, 645 F.3d 1240, 1251-52 (11th Cir. 2011);  Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004); Durruthy v. Pastor, 351 F.3d 1080, 1093-94 (11th Cir. 2003).

In accordance with Graham, in determining whether Officer Gillespie's use of force in this instance was reasonable, the Court considers "(1) the severity of the crime at issue; (2) whether [Howard] pose[d] an immediate threat to the officer or others; and (3) whether [Howard] was resisting arrest or attempting to flee."   Taylor v. Taylor, 649 F. App'x 737, 746 (11th Cir. 2016) (citing Lee 284

F.3d at 1198).   Doing so, the Court recognizes that it is well settled that in effectuating an arrest the use of some force is warranted.   See Brown v. City of Huntsville, 608 F.3d 738, 739-40 (11th Cir. 2010) ("[T]he law permits some use of force in any arrest.").   see also Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).   Indeed, the Eleventh Circuit has unequivocally stated that a "law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest."   Id. at 740.   Even when a suspect is not actively resisting arrest or attempting to flee, the police may use a "reasonable amount of force to subdue and secure" the suspect.   Lee, 284 F.3d at 1198. Moreover, the court has said that even for "minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls."   Brown, 608 F.3d at 740.

Here, while driving an unregistered vehicle[10] and driving without a seatbelt[11] are relatively minor offenses, the facts demonstrate that from the

---

[10]      The Court notes that the Department of Highway Safety and Motor Vehicles later informed the Sheriff that Howard's vehicle appeared in their system as unregistered in error. Deputy Briggs Depo at 13; see Howard Depo at 194-96.

[11]      According to Deputy Briggs, he confirmed through Howard's open window that Howard was not wearing a seatbelt.   Deputy Briggs Depo at 12-13.   However, Howard insisted in his deposition that he was wearing his seatbelt the entire time.   See Howard Depo at 75, 191. For purposes of summary judgment, the Court resolves all factual disputes in the light most favorable to Howard and as such, the Court will assume Howard was wearing his seatbelt. Nevertheless, as Officer Gillespie points out in her Motion, "Plaintiff does not challenge his detention or arrest. Rather, Plaintiff challenges only the force applied to him."   See Officer Gillespie's Motion at 19.   Accordingly, the dispute regarding whether Howard was wearing his seatbelt is not a material dispute of fact for purposes of resolving Officer Gillespie's Motion seeking judgment as a matter of law with regard to Howard's excessive force claim.   See Williams v. Sirmons, 307 F. App'x 354, 358 (11th Cir. 2009) (quoting Hadley v. Gutierrez, 526

outset of his encounter with Deputy Briggs and continuing after the arrival of Officer Gillespie, Howard refused to comply with the officers' commands and resisted their attempts to effectuate his arrest. Regardless of whether he noticed Deputy Briggs following him, it is undisputed that Howard did not pull over in response to Deputy Briggs' emergency lighting and sirens. Howard Depo at 74; Deputy Briggs Depo at 17-18. When he finally exited his vehicle in the gym parking lot, Howard immediately questioned Deputy Briggs' authority. Howard Depo at 74, 78. He admits that he refused to turn around to the back of his truck when directed to do so by Deputy Briggs and admits that he expressly told Deputy Briggs he would not comply. Id. at 80-81, 172. When Deputy Briggs asked Howard to lay on the ground, Howard told Deputy Briggs that he would not comply with that request either. Id. at 81, 84, 172, 176. Howard proceeded to negotiate with Deputy Briggs and condition his compliance on Deputy Briggs lowering his firearm. Id. at 84. Once Officer Gillespie arrived, Howard walked away from Deputy Briggs and began using profanity with the law enforcement officers. See id. at 86, 189. And Howard admits that he refused Officer Gillespie's requests to put his hands behind his back and to get to the ground. Howard Depo at 92-94.

---

F. 3d 1324, 1329 (11th Cir. 2008)) (An excessive force claim "relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest.").

While Howard explains in his deposition that he refused to comply because he did not believe he committed a crime, his motivation does not change the objective fact that Howard did not comply with the orders and resisted the officers' attempt to handcuff him to effectuate his arrest.   Id. at 89-90. Notably, the video shows both Deputy Briggs and Officer Gillespie with their tasers pointed at Howard as they issue commands.   Howard testified that he heard the officers talk about using a taser, Deputy Briggs at one point said, "light him up," and that the mere act of bringing out the tasers operated as a warning to him.   Id. at 94, 190.   Moreover, as the camera pans away from the individuals on screen, Officer Gillespie can be heard warning Howard that she was going to tase him.   Howard, who is noticeably larger than Deputy Briggs and Officer Gillespie, slowly stepped backwards in circles away from the law enforcement officers as he shook his finger at Deputy Briggs and raised his voice in defiance.   Deputy Briggs then attempted to grab Howard's arm again but Howard pulled away and backed up positioning himself between the officers. Finally, Officer Gillespie declared "Taser!" before discharging the taser at Howard and the officers were finally able to restrain Howard with handcuffs. This undisputed record shows that Howard continuously refused to comply with the officers' commands and resisted their attempts to effectuate his arrest prior to his being tased.   Under these circumstances, Officer Gillespie's single use of a taser to restrain Howard was not unreasonable.

Important to the determination of whether any force used by an officer was excessive, is the question of whether the arrestee complied with the officer's commands, or whether the arrestee resisted the officer's attempts to effectuate the arrest.   See Draper, 369 F.3d at 1278 (officer's use of taser against plaintiff reasonable where plaintiff was "hostile, belligerent, and uncooperative" with officer in the course of the arrest); Hines v. Jefferson, 338 F. Supp. 3d 1288, 1298 (N.D. Ga. 2018), aff'd 795 F. App'x 707 (11th Cir. 2019) (officer's use of chokehold was reasonable where plaintiff admitted to resisting and struggling against officer); Crutcher v. Athens Police Dep't, NO. CV-10-S-1176-NE, 2014 WL 5521944, at *6 (N.D. Ala. Oct. 31, 2014) (officer's use of chokehold that resulted in plaintiff losing consciousness not unreasonable where plaintiff actively resisted arrest).   Indeed, the Eleventh Circuit has held that an officer's use of force, specifically a taser, was not unreasonable even though the individual was handcuffed because the individual continued to resist the officer's orders.   See Buckley v. Haddock, 292 F. App'x 791, 792 (11th Cir. 2008).

The circumstances of Howard's encounter with law enforcement are similar to the facts present in decisions from the Eleventh Circuit where the court has concluded that the defendant's action did not violate the Constitution. See Draper, 369 F.3d at 1278; see Buckley, 292 F. App'x at 792; see Charles v. Johnson, 18 F.4th 686, 701 (11th Cir. 2021).   In his Response to Officer

Gillespie's Motion, Howard contends that <u>Draper</u> is distinguishable from his case.   <u>See</u> Response to Officer Gillespie at 4.   Specifically, he argues that "the actions of the Plaintiff in [<u>Draper</u>] were more serious threatening and intimidating . . . ."   <u>See</u> <u>id.</u> at 5.   However, the record evidence fails to support his claim that any difference in the conduct of the arrestee in these two cases constitutes a meaningful difference.

In <u>Draper</u>, after being stopped for a traffic infraction, the plaintiff did not comply with law enforcement's immediate orders and attempted to bargain with law enforcement.   369 F.3d at 1272.   He shouted and complained and insisted he did nothing wrong.   <u>Id.</u>   He also accused the officers of harassing him and failed to comply with numerous instructions from the officers.   <u>Id.</u>   After he failed to comply with the officer's fifth request to retrieve documents from his car, the officer discharged a taser at his chest.   <u>Id.</u>

Like Draper, Howard was stopped only for a traffic infraction. Nevertheless, his continued refusal to comply with law enforcement orders warranted the use of a taser.   Prior to being tased, Howard also like Draper, complained about the arrest, bargained with Deputy Briggs, used profanity with both officers, failed to follow numerous commands, shouted at and shook his finger at the officers.   Moreover, Howard refused to face his truck, refused to get on the ground, refused to put his hands behind his back, actively pulled his arm away from Deputy Briggs when he tried to handcuff him, and

repeatedly walked away from Deputy Briggs and Officer Gillespie when they attempted to approach him.   Howard points to no legal support for a conclusion that such verbal and physical acts of defiance while the officers tried to restrain Howard would be in any way less threatening and dangerous to the officers than Draper's verbal refusal to retrieve documents.   And, to the extent Howard argues that <u>Draper</u> is distinguishable because the plaintiff there was not tased near the groin, he fails to offer any relevant authority suggesting that being tased in that particular area elevates the ordinarily constitutional use of a taser to a constitutional violation.

Recently, in <u>Charles</u>, the Eleventh Circuit Court of Appeals observed that "[t]he use of a taser is not categorically unconstitutional.   We have found that the use of a taser can be appropriate in a wide array of situations."   <u>Charles</u>, 18 F.4th at 701 (citing <u>Hoyt v. Cooks</u>, 672 F.3d 972, 980 (11th Cir. 2012); <u>Zivojinovich v. Barner</u>, 525 F.3d 1059, 1073 (11th Cir. 2008); <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1278 (11th Cir. 2004)).   After reviewing the circumstances of the arrest there, the court found that the single use of a taser on an individual who had actively resisted arrest for more than five minutes was not excessive even though the taser was deployed after the individual was handcuffed because he had continued to resist and disobey orders.   <u>Id.</u>   For similar reasons, in <u>Buckley</u>, the Eleventh Circuit reversed the denial of a motion for summary judgment on the basis of qualified immunity on behalf of officers

who repeatedly used a taser to complete an arrest.   In doing so, the court found the use of the taser five times was not constitutionally excessive even though the individual was engaging only in passive resistance and already handcuffed. Buckley, 292 F. App'x at 794-96.   The Eleventh Circuit reasoned that although the offense, a traffic citation was minor, the government has a significant interest in enforcing the law on its own terms and in "arrests being completed efficiently and without waste of limited resources: police time and energy that may be needed elsewhere at any moment."   Id. at 794.   The court noted that the deputy gave the plaintiff "ample warning and opportunity to cease resisting before the deputy resorted gradually to more forceful measures" and that his "use of force was not unconstitutionally excessive."   Id. at 796.   In reaching its conclusion, the court explained:

> This case is not one where a compliant arrestee was abused for no good reason.   Cf., e.g., Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008) (handcuffed, non-resisting arrestee in the custody of two officers is beaten).   In the light of all the circumstances, therefore, we conclude that [the deputy's] use of force was not constitutionally excessive.

Buckley, 292 F. App'x at 796.

Here, the undisputed record establishes that at the time Officer Gillespie deployed the taser, Howard had been refusing to comply with the officers' orders and both verbally and physically resisting efforts to arrest him.   He had been warned and given the opportunity to comply but refused.   As in Draper,

<u>Charles</u>, and <u>Buckley</u>, it cannot be said that the single use of a taser under the totality of the circumstances faced by Officer Gillespie at the time was constitutionally excessive.   Accordingly, to the extent Officer Gillespie seeks summary judgment on Howard's claim that she used excessive force in arresting him, Officer Gillespie is entitled to judgment in her favor because her actions did not violate his right to be free from the use of excessive force.

Moreover, even if the Court found otherwise, Howard fails to point to facts supporting a conclusion that Officer Gillespie violated a clearly established constitutional right.   <u>See</u> <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004), <u>abrogated on other grounds by</u> <u>Williams v. Aguirre</u>, 965 F.3d 1147 (11th Cir. 2020).   In this context, the Supreme Court has explained:

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

<u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (citation omitted) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).   For purposes of this analysis the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the plaintiff was unconstitutional. <u>Vinyard</u>, 311 F.3d at 1350 (<u>quoting</u> <u>Hope</u>, 536 U.S. at 741); <u>see also</u> <u>Marsh</u>, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone

of qualified immunity.").   Because Officer Gillespie's use of a taser under these circumstances was not excessive "it logically could not have been clearly established or apparent to [Officer Gillespie] that the use of the taser was excessive."   <u>Charles</u>, 18 F.4th at 701.[12]   For this additional reason, summary judgment is due to be entered in favor of Officer Gillespie on the excessive force claim in Count II of Howard's Amended Complaint.

Because the Court determined that there was no constitutional violation in Count II, there can be no municipal liability for Officer Gillespie's actions. <u>See</u> <u>Case v. Eslinger</u>, 555 F.3d 1317, 1328 (11th Cir. 2009) (affirming district court's conclusion that there could be no municipal liability in the absence of a constitutional violation); <u>Beshers v. Harrison</u>, 495 F.3d 1260, 1264 n. 7 (11th Cir. 2007) ("we need not address Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred"); <u>Rooney v. Watson</u>, 101 F.3d 1378, 1381-82 (11th Cir. 1996) (finding it unnecessary to

---

[12]    Howard's citation to <u>Geist v. Ammary</u>, 40 F. Supp. 3d 467, 471-73 (E.D. Pa. 2014) is unavailing.   First, this decision comes from a district court in Pennsylvania and cannot clearly establish the law for purposes of Howard's claim against Officer Gillespie, a Florida law enforcement officer.   <u>See</u> <u>Harper v. Lawrence County, Ala.</u>, 584 F.3d 1030, 1037 (11th Cir. 2009).   Second, the <u>Geist</u> court merely determined that "[s]everal facts material to the determination of reasonableness remain[ed] in dispute," and that "[t]hese disputes should be resolved by a jury, not the court."   <u>Id.</u> at 485.   The court declined to determine whether a constitutional violation had occurred and thus, cannot be said to contain facts that clearly establish when a defendant has violated a constitutional right.   Even if the decision came from a relevant jurisdiction, the court's holding in <u>Geist</u> cannot give a government actor "fair warning" that a particular treatment of a plaintiff would be unconstitutional where the court made no such determination.

consider claims of municipal liability based on either a policy or custom or a failure to train because the court had determined that no constitutional violation occurred).   As such, summary judgment is also due to be entered in favor of the City on Howard's excessive force claim in Count IV.

**B. State Law Battery Claims**

Remaining, are Howard's state law battery claims against the Sheriff and the City in Counts VI and VII.   However, having previously dismissed Howard's federal claims against Deputy Briggs and the Sheriff and determined that summary judgment is due to be granted in favor of the City and Officer Gillespie on Howard's remaining federal claims, the Court must next consider whether to continue to exercise supplemental jurisdiction over these state law claims.

At the time the instant case was filed, the Court had original jurisdiction over the federal claims, see 28 U.S.C. § 1331, as well as supplemental jurisdiction over Howard's state law claims pursuant to 28 U.S.C. § 1367(a). See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed.2d 218 (1966).   However, § 1367(c)(3) gives a court discretion to dismiss or remand to state court claims before it on the basis of supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   Indeed, the Eleventh Circuit has held that a district court may properly decline to exercise jurisdiction over

supplemental state law claims when the federal claims over which the Court had original jurisdiction are dismissed on a motion for summary judgment, as is the case here. See Murphy v. Fla. Keys Elec. Co-op Ass'n, Inc., 329 F.3d 1311, 1320 (11th Cir. 2003) (affirming summary judgment on defendant's contribution claim invoking admiralty jurisdiction, and affirming dismissal of third-party defendant's state law counterclaim under 28 U.S.C. § 1367(c)); Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3)."); Eubanks v. Gerwen, 40 F.3d 1157, 1162 (11th Cir. 1994) (stating that since the "federal claims [had] been disposed of rather early on at the summary judgment phase[,] . . . comity suggests that the remaining state law malicious prosecution claim should be heard in state court"); see also Maschmeier v. Scott, 508 F. Supp. 2d 1180, 1185-86 (M.D. Fla. 2007) (declining to exercise supplemental jurisdiction over the plaintiff's state law claim after granting summary judgment in favor of the defendant on the plaintiff's federal claims).

In deciding whether to exercise supplemental jurisdiction over state law claims, district courts consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims," as well as "the values of

judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173, 118 S. Ct. 523, 534, 139 L. Ed.2d 525 (1997) (internal quotations omitted) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed.2d 720 (1988)).   "[W]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."   Cohill, 484 U.S. at 350, 108 S. Ct. at 619 (citing Gibbs, 383 U.S. at 726-27, 86 S. Ct. at 1139) (footnote omitted); Gibbs, 383 U.S. at 726, 86 S. Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also Raney v. Allstate Ins. Co., 370 F.3d 1086,1089 (11th Cir. 2004) (stating that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial") (citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)).   Notably, the Supreme Court's directive in Cohill concerning when a district court should decline to continue to exercise supplemental jurisdiction did not "'establish a mandatory rule to be applied inflexibly in all cases,'" but "it did establish a general rule to be applied in all but extraordinary cases."   Carr v. Tatangelo, 156 F. Supp. 2d 1369, 1380 (M.D. Ga. 2001) (citing Cohill, 484

U.S. at 350 n.7, 108 S. Ct. at 619 n.7), aff'd, 338 F.3d 1259 (11th Cir. 2003). Moreover, because "[s]tate courts, not federal courts, should be the final arbiters of state law," dismissal of state law claims is strongly encouraged when federal claims are dismissed prior to trial.   Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997).

Here, the Court has determined that judgment in favor of all Defendants is proper with regard to Howard's federal claims.   Because all federal claims have been dismissed prior to trial, the Court has the authority under § 1367(c) to decline to retain jurisdiction over the remaining state law claims.   See Murphy, 329 F.3d at 1320; Carr, 156 F. Supp. 2d at 1380 (dismissing state law claims without prejudice after finding the defendants to be entitled to qualified immunity as to the federal claims and noting that it is preferable for state courts to "make rulings on issues of state law.").   However, before determining whether to do so, since the statute of limitations for each of Howard's state law claims is four years, see generally Fla. Stat. § 95.11(3)(o),[13] and the claims arose in April 2016, the Court considers the effect of § 1367's tolling provision on Howard's ability to continue to pursue these claims.   This provision states:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled

---

[13]   With certain exceptions not applicable here, Florida law provides a four year statute of limitations for claims of "assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort. . . ."   Fla. Stat. § 95.11(3)(o).

> while the claim is pending and for a period of 30 days after
> it is dismissed unless State law provides for a longer tolling
> period.

28 U.S.C. § 1367(d).   Under common law principles of pendent jurisdiction, a district court's dismissal of pendent claims (now referred to as supplemental claims) when the state statute of limitations had expired was considered an abuse of discretion.   See Edwards v. Okaloosa Cnty., 5 F.3d 1431,1433 n.1, 1435 (11th Cir. 1993) (holding that it was an abuse of discretion to dismiss pendent state law claims where the state statute of limitations had run during the federal litigation, but noting that if 28 U.S.C. § 1367 were applicable, subsection (d) would toll the Florida statute of limitations, preserving the plaintiff's state law claim).   In 1990 Congress enacted 28 U.S.C. § 1367 in which it codified the doctrines of pendant and ancillary jurisdiction under the name supplemental jurisdiction.   Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1562 n.3 (11th Cir. 1994).   In doing do, Congress included subsection (d) of 28 U.S.C. § 1367 "[t]o prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court."   Jinks v. Richland Cnty., S.C., 538 U.S. 456, 459, 123 S. Ct. 1667, 1669, 155 L. Ed.2d 631 (2003).   Consequently, § 1367(d) tolls the statute of limitations for supplemental state law claims while they are pending in federal court.   See Gainor v. Douglas Cnty., Ga., 59 F. Supp. 2d 1259, 1296 (N.D. Ga. 1998) (holding that since § 1367(d) applied, the "plaintiff's state law

claims [were not] barred by Georgia's applicable statute of limitations, as the limitation period [was] tolled while [those] claims [were] pending before [that] [c]ourt").   Upon the filing of this action, the Court exercised supplemental jurisdiction under § 1367(a) over Howard's state law claims.   Thus, § 1367(d) functions to toll the statute of limitations on those claims during the pendency of this action, and Howard may re-file them in state court if he wishes to do so. See Jinks, 538 U.S. at 463-64, 123 S. Ct. at 1672 (stating that § 1367(d) provides the "assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court").

Since Florida's applicable statute of limitations presents no impediment to Howard's ability to pursue his state law claims in state court, the Court may properly decline to continue to exercise supplemental jurisdiction as to those claims.   Upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction."   Palmer, 22 F.3d at 1569.   Here, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Howard's state law claims.   The Court has concluded that summary judgment is due to be granted in favor of the City and Officer Gillespie on the only remaining federal claims.   What remains are uniquely state law claims that are best addressed by the state courts.   When,

as here, a plaintiff's federal claims are eliminated prior to trial, district courts are encouraged "to dismiss any remaining state claims."   Murphy v. City of Aventura, 383 F. App'x 915, 919 (11th Cir. 2010) (affirming dismissal of state law claims following entry of summary judgment against plaintiff on the federal employment law claims, and noting that the court, the Eleventh Circuit, encourages district courts to take such action) (citing Raney, 370 F.3d at 1089); see also Cohill, 484 U.S. 343 at 350 n.7, 108 S. Ct. at 619 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine- judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims.").   As such, the Court declines to continue to exercise supplemental jurisdiction over Howard's claim in Count VI against the Sheriff and his claim in Count VII against the City. Those counts are due to be dismissed without prejudice.

Accordingly, it is

**ORDERED:**

1.     Defendant St. Johns County Sheriff's Motion for Summary Judgment (Doc. 48) is **DENIED**.   In its discretion under 28 U.S.C. § 1367(c), the Court declines to continue to exercise jurisdiction over Howard's claim in Count VI against the Sheriff, and Count VI is

**DISMISSED WITHOUT PREJUDICE** to Howard refiling this claim in state court if he so chooses.

2.   Defendant, City of St. Augustine Beach's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 49) is **GRANTED, in part, and DENIED, in part**.

  a.  The Motion is **GRANTED** with respect to Count IV, and the Clerk of the Court is directed to enter **JUDGMENT** in favor of the City of St. Augustine Beach and against Kasim Howard as to this count.

  b.  The Motion is **DENIED** as to Count VII.  In its discretion under 28 U.S.C. § 1367(c), the Court declines to continue to exercise jurisdiction over this claim, and Count VII is **DISMISSED WITHOUT PREJUDICE** to Howard refiling this claim in state court if he so chooses.

3.   Defendant, Natalie L. Gillespie's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 50) is **GRANTED**. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Officer Gillespie and against Kasim Howard.

4.      The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 4th day of March, 2022.

MARCIA MORALES HOWARD
United States District Judge

lc28

Copies to:
Counsel of Record